1   XAVIER BECERRA
    Attorney General of California
2   PAUL STEIN
    Supervising Deputy Attorney General
3   LISA J. PLANK
    Deputy Attorney General
4   TODD GRABARSKY
    Deputy Attorney General
5   State Bar No. 286999
      300 South Spring Street, Suite 1702
6     Los Angeles, CA  90013
      Telephone:  (213) 269-6044
7     Fax:  (916) 731-2124
      E-mail:  Todd.Grabarsky@doj.ca.gov
8   *Attorneys for Defendants Gavin Newsom,*
    *California Governor; Xavier Becerra,*
9   *California Attorney General; and Sandra*
    *Shewry,[1] Acting Director of the California*
10  *Department of Public Health*

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14

15  | **SOUTH BAY UNITED** | 3:20-cv-00865 BAS-AHG |
    | **PENTECOSTAL CHURCH, a** | |
16  | **California non-profit corporation,** | **STATE DEFENDANTS' SECOND** |
    | **BISHOP ARTHUR HODGES III, an** | **NOTICE OF SUPPLEMENTAL** |
17  | **individual,** | **AUTHORITY IN SUPPORT OF** |
    | | **THEIR OPPOSITION TO** |
18  | Plaintiffs, | **PLAINTIFFS' RENEWED** |
    | | **MOTION FOR TEMPORARY** |
19  | **v.** | **RESTRAINING ORDER** |

20  **GAVIN NEWSOM, in his Official**
    **Capacity as Governor of the State of**
21  **California; XAVIER BECERRA, in**
    **his Official Capacity as Attorney**
22  **General of California; SONIA**
    **ANGELL, in her Official Capacity as**
23  **Director of the California Department**
    **of Public Health, et al.,**
24
                              Defendants.
25

26

27          _____
      [1]  Defendant Sandra Shewry, the current Acting Director of the California
28  Department of Public Health, is automatically substituted for Defendant Sonia
    Angell as a defendant.  Fed. R. Civ. P. 25(d).

    _____
                Second Notice of Supplemental Authority (3:20-cv-00865-BAS-AHG)

1     TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

2     PLEASE TAKE NOTICE of the following supplemental authorities, which

3 were issued after the State Defendants filed their Opposition to Plaintiffs' Renewed

4 Motion for Temporary Restraining Order:

5     1.    On September 10, 2020, the court in *County of Los Angeles v. Grace*

6 *Community Church of the Valley*, No. 20STCV30695 (L.A. Cty. Sup. Ct.), issued

7 an order granting a preliminary injunction, attached hereto as **Exhibit A**, enjoining

8 a church from violating Los Angeles County's health restrictions on in-person

9 worship services, which are similar if not the same as the State's restrictions.  The

10 Order was accompanied by an 18-page ruling, attached hereto as **Exhibit B**.  It

11 should also be noted that the church, represented by the same counsel as Plaintiffs

12 in the present matter, presented much of the same evidence as Plaintiffs have in the

13 present matter, including similar declarations from Charles Cicchetti, Dr. George

14 Delgado, James Lyons-Weiler, Dr. Jayanta Bhattacharya, and Sean Kaufman.

15     In rejecting the church's evidence and arguments and granting the injunction,

16 the Court found that the County is likely to succeed in its enforcement action

17 against the church.  *First*, the Court held that the restrictions are a permissible

18 exercise of the County's emergency powers, given the ongoing public health

19 emergency the COVID-19 pandemic poses, and that they have a real and substantial

20 relation to protecting public health.  Ruling at 8-12 (citing, *inter alia*, *Jacobson v.*

21 *Massachusetts*, 197 U.S. 11 (1905)).  *Second*, the Court held that the restrictions do

22 not discriminate against religion, facially or as applied, because they "operate

23 evenly without regard to religion or activities specifically attributable to religious

24 worship"; therefore, they do not violate the federal Free Exercise Clause.  *Id.* at 12-

25 15 (citing *inter alia*, *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S.

26 520, 533, 543 (1993); *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct.

27 1613 (2020)); *see also id.* at 14 n.10 (rejecting the church's discriminatory

28 enforcement argument concerning County's purported treatment of protests and

demonstrations following the killing of George Floyd).  *And third*, the Court held that the restrictions do not violate the California Constitution's free exercise provision, Article I, Section 4, for the same reasons, because, under the California Constitution, "strict scrutiny is not the proper standard to evaluate the County Health Order in the context of the circumstances here, a public health emergency." *Id.* at 15-16 (citing *Catholic Charities of Sacramento, Inc. v. Superior Court*, 32 Cal.4th 527 (2004)).  The Court explained that interpreting the state free exercise provision the same as the federal Free Exercise Clause comports with the text of the former provision, which "does not excuse acts that are . . . inconsistent with the . . . safety of the State," as well as prior case law.  *Id.* at 16 (citing *Rescue Army v. Municipal Court of L.A.*, 28 Cal.2d 460 (1946)).

In addition, the Court found that the balance of harms weighs in the County's favor because "[t]he potential consequences of community spread of COVID-19 and concomitant risk of death to members of the community—associated and unassociated with the Church—outweighs the harm that flows from the restriction on indoor worship caused by the County Health Order." *Id.* at 18.  The Court noted that any harm suffered by the church is mitigated by the County's allowance of other means of religious expression such as worship services conducted outdoors or remotely. *Id.*

2.    On September 9, 2020, the California Supreme Court denied two Peremptory Writs of Mandate in *Immanuel Schools v. Newsom*, No. S264063, and *Orange County Board of Education v. Newsom*, No. S264065, attached hereto as **Exhibit C**, denying injunctions against the State's COVID-19-related restrictions on in-person school instruction.

In addition to adding to the overwhelming weight of authority upholding the lawfulness of the State's COVID-19 related restrictions in the face of similar challenges, these rulings decisively undermine Plaintiffs' argument—based on earlier orders in those same cases—that "California courts are beginning to

1  recognize" that the COVID-19 pandemic no long poses an emergency.  Pls.' Reply

2  at 1-2 (ECF No. 61).

3

4  Dated:  September 10, 2020                    Respectfully Submitted,

5                                                XAVIER BECERRA
                                                 Attorney General of California
6                                                PAUL STEIN
                                                 Supervising Deputy Attorney General
7                                                LISA J. PLANK
                                                 Deputy Attorney General

8

9

10                                               */s/ Todd Grabarsky*
                                                 TODD GRABARSKY
11                                               Deputy Attorney General
                                                 *Attorneys for Defendants Gavin*
12                                               *Newsom, California Governor;*
                                                 *Xavier Becerra, California Attorney*
13                                               *General; and Sandra Shewry, Acting*
                                                 *Director of the California*
14                                               *Department of Public Health*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Second Notice of Supplemental Authority (3:20-cv-00865-BAS-AHG)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2020, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  September 10, 2020         */s/ Todd Grabarsky*
                                   TODD GRABARSKY

# Exhibit A

Electronically Received 08/28/2020 04:29 PM

**FILED**
Superior Court of California
County of Los Angeles

SEP 10 2020

Sherri R. Carter, Executive Officer/Clerk
By _Anali Rodriguez_ Deputy
Araceli Rodriguez

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| COUNTY OF LOS ANGELES, a political subdivision of the State of California; and MUNTU DAVIS, M.D., M.P.H., in his capacity as Health Officer for Los Angeles County, | **CASE NO. 20STCV30695**<br><br>~~[PROPOSED]~~ **ORDER GRANTING PRELIMINARY INJUNCTION** |
| Plaintiffs, | *[Filed Concurrently with Opposition to Request for Judicial Notice; Response to Evidentiary Objections; Reply; Request for Judicial Notice; and Evidentiary Objections]* |
| v. | |
| GRACE COMMUNITY CHURCH OF THE VALLEY, a California corporation; JOHN MACARTHUR, an individual; and DOES 1-100, inclusive, | Date:   September 4, 2020<br>Time:   9:30 a.m.<br>Dept.:   86 |
| Defendants | Assigned for All Purposes to:<br>Hon. Gregory W. Alarcon, Dept. 36 |
| | Action Filed:   August 14, 2020<br>Trial Date:   None Set |

473516.2

ORDER GRANTING PRELIMINARY INJUNCTION

1    **ORDER**

2        On September 4, 2020 at 9:30 a.m. or as soon thereafter as the matter could be heard,

3    Plaintiffs County of Los Angeles (the "County") and Muntu Davis, M.D., M.P.H. ("Dr. Davis" or

4    the "County Health Officer," and collectively with the County, the "Plaintiffs") Order to Show

5    Cause re Preliminary Injunction (the "Motion") came on for hearing in Department 86 of the

6    above-entitled Court, located at 111 North Hill Street, Los Angeles, California 90012, the

7    Honorable Mitchell L. Beckloff presiding.

8        The Court, having considered the papers submitted by the parties, and having heard

9    arguments of counsel, finds that there is an immediate threat to public health and safety due to the

10   COVID-19 pandemic.  The Court further finds that Plaintiffs are likely to prevail on the merits of

11   their complaint and that the harm to the general public, including all residents of Los Angeles

12   County, from the nonissuance of a preliminary injunction outweighs the harm to Defendants from

13   the issuance of a preliminary injunction.  Accordingly, Plaintiffs' Motion is **GRANTED** in its

14   entirety.

15   **PRELIMINARY INJUNCTION**

16       **IT IS HEREBY ORDERED** that Defendants Grace Community Church of the Valley,

17   John MacArthur, and each of them, and their agents, employees, representatives, ~~members, and~~

18   ~~volunteers~~, and all persons acting under, in concert with or for them, are hereby enjoined and

19   prohibited from:

20       1.    Conducting, participating in, or attending any indoor worship services at 13248

21   Roscoe Blvd., Sun Valley, CA 91352 (the "Church") or any other place within Los Angeles

22   County in violation of all ~~applicable state and~~ local health orders, ~~including the Statewide Public~~

23   ~~Health Officer Order issued July 13, 2020 and~~ *including* the Reopening Safer at Work and in the

24   Community for Control of COVID-19 Order issued by the County Health Officer on July 18, 2020

25   (collectively, the "~~State and~~ County Orders").

26       2.    Conducting, participating in, or attending any outdoor worship services at the

27   Church or any other place within Los Angeles County unless, at all times during the services, they

28   (a) fully comply with the ~~State and~~ County Orders, (b) comply with the mandates of the ~~State and~~

1  County Orders to wear face coverings and practice physical distancing, and (c) do not permit or

2  allow any violations of the ~~State and~~ County Orders.

3      **IT IS FURTHER HEREBY ORDERED** that the County Health Officer, or his

4  designees, is hereby authorized:

5      1.      To enter onto the Church premises to post notice of this Order in visible locations,

6  including exterior fences, gates, structures, door, or any other structure thereupon, and to distribute

7  this Order to Defendants and/or any other persons present; and

8      2.      To enter onto the Church premises to verify compliance with the ~~State and~~ County

9  Orders.

10  ~~This Order shall be served on Defendants no later than _____, by electronic mail.~~

11  ~~Proof of service shall be filed no later than _____.~~

12

13      **IT IS SO ORDERED.**

14

15  DATED:    9/10/20    , 2020

16                                      Hon. Mitchell L. Beckloff
                                        Judge of the Los Angeles Superior Court

17

18

19

20

21

22

23

24

25

26

27

28

473516.2                                3

# Exhibit B

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 86

**20STCV30695**                                                              September 10, 2020
**COUNTY OF LOS ANGELES, et al. vs GRACE COMMUNITY**                          8:30 AM
**CHURCH OF THE VALLEY, et al.**

Judge: Honorable Mitchell L. Beckloff                CSR: None
Judicial Assistant: A. Rodriguez                     ERM: None
Courtroom Assistant: None                            Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Ruling on Submitted Matter

The Court, having taken the matter under submission on 09/04/2020, now rules as follows:

The Court issues its ruling in accordance with the "ORDER GRANTING PRELIMINARY INJUNCTION" consisting of 18 pages, filed this date and incorporated herein by reference to the Court file.

Summary of the Court's ruling: The Court finds the County has demonstrated a likelihood of success on the merits of its claims. The Court also finds the balance of harms tips in favor. Accordingly, the County's request for a preliminary injunction is granted. No bond is required.

The Clerk hereby gives notice to the plaintiff, who is to give notice to all parties of record. A copy of the Ruling on the Order Granting Preliminary Injunction and Order Granting Preliminary are emailed to counsel.

Certificate of Mailing is attached.

**County of Los Angeles v. Grace Community Church of the Valley, et al.**
20STCV30695
Hearing Date: September 4, 2020

**FILED**
Superior Court of California
County of Los Angeles

SEP 10 2020

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Araceli Rodriguez

### Order Granting Preliminary Injunction

(The written Order Granting Preliminary Injunction is signed this date.)

---

On August 14, 2020, the County of Los Angeles and its Health Officer, Dr. Muntu Davis, M.D. (collectively, the County) filed its Complaint for: (1) Violation of Emergency Health Orders; and (2) Abatement of Public Nuisance (the Complaint). The County named Grace Community Church of the Valley and its Pastor, John MacArthur, as Defendants (collectively, the Church).

On that same date, the County sought an *ex parte* temporary restraining order (TRO) as well as an order to show cause why a preliminary injunction should not issue restraining the Church from "conducting, participating in, or attending any indoor worship services" in violation of "all applicable state and local health orders . . . ." (*Ex Parte* App. 2:11-13.) The County also sought a TRO restraining the Church from "conducting, participating in, or attending any outdoor worship services . . . unless, at all times during the services, they (a) fully comply with all applicable State and County Orders, (b) comply with the mandates of the Health Orders to wear face coverings and practice physical distancing, and (c) do not permit or allow any violations of the State and County Orders." (*Ex Parte* App. 2:18-22.) Finally, the County sought a companion order allowing the "County Health Officer, or his designees," to enter onto the Church's property to verify compliance with the health orders. (*Ex Parte* App. 2:28.)

The court (Hon. James C. Chalfant) denied the County's request and issued an order allowing indoor worship but requiring those in attendance to wear face coverings and practice social distancing.[1] The court also set the matter for September 4 ordering the Church to show cause why a preliminary injunction should not issue as originally requested by the County.

Later that day, Plaintiffs filed a petition for a writ of mandate with the Court of Appeal. The following day, Saturday, August 15, 2020, Division Two of this District's Court of Appeal issued its order on the County's petition for a writ of mandate. The Court of Appeal stayed the court's order of August 14: "For these reasons, we issue a stay of that portion of the trial court's order denying the County the right to enforce the Health Order's ban on 'indoor religious activity' pending our final resolution of the County's petition for a writ of mandate . . . ."

---

[1] More precisely, the court's order provided Defendants were "enjoined in and prohibited from 1. Conducting, participating in, or attending any indoor worship services at 13248 Roscoe Blvd., Sun Valley, CA 91352 (the 'Church') unless, at all times during the services, they comply with mandates of the Health Orders to wear face coverings and practice physical distancing."

Despite the Court of Appeal's intervention, it directed this court to proceed with its "previously scheduled hearing for a preliminary injunction, set for September 4, 2020 . . . ."

**The Complaint Allegations:**

"COVID-19 is an unprecedented health crisis." (Complaint ¶ 1.) "As of August 11, 2020, there were over 211,800 known cases of COVID-19 and over 5,000 deaths in the County." (*Ibid.*) The COVID-19 "pandemic shows no sign of relenting." (*Ibid.*)

State and local health officers have "issued orders restricting activities that pose the most risk for spreading COVID-19." (Complaint ¶ 2.) Over time, as circumstances have changed, the health officers have modified those orders. (*Ibid.*)

"The virus that causes COVID-19 spreads easily through person-to-person contact. The risk of transmission is increased when people are in close proximity for a substantial period of time. For this reason, State and County officials have restricted indoor operations at a variety of establishments. For example, bars, movie theaters, arcades, concert venues, bowling alleys, and cardrooms are ordered closed. For other establishments, indoor operations are prohibited, but outdoor operations are permitted, such as restaurants, museums, and places of worship." (Complaint ¶ 3.)

The Church "began holding indoor services . . . in violation of State and County public health orders designed to stop the spread of the virus." (Complaint ¶ 4.) During the indoor worship services, large numbers of attendees do not wear masks or engage in social distancing. (*Ibid.*) The Church began its indoor worship services on July 26, 2020 and continue to worship indoors each Sunday. (*Ibid.*)

The Church is violating various health orders through its indoor worship services. (Complaint ¶¶ 28, 39.) The Church's continuing violation constitutes a public nuisance *per se*. (Complaint ¶ 44.) As the County has no adequate remedy at law, injunctive relief is warranted to prevent ongoing violations of the various health orders. (Complaint ¶¶ 41, 46 and Prayer.)

**Requests for Judicial Notice:**

The County's request for judicial notice (RJN) of Exhibits A and B is granted. (Evid. Code § 452, subd. (b) and (c).)

The Church's RJN of Exhibits A through H is granted. (Evid. Code § 452, subd. (h); *Brown v. Smith* (2018) 24 Cal.App.5th 1135, 1142-1143. See *Moehring v. Thomas* (2005) 126 Cal.App.4th 1515, 1523, fn. 4. *Cf. Behr v. Redmond* (2011) 193 Cal.App.4th 517, 537 fn. 7.) The County's objection is overruled.

The Church's RJN of Exhibits I and J is granted as to existence of the documents only but not the truth of the matters contained therein. (Evid. Code § 452, subd. (h).)

The Church's RJN is denied as to the following facts: (1) The infection fatality rate for California—the likelihood of someone dying if they are infected with COVID-19—is only 1.8 percent. (2) The two leading causes of death in California are heart disease (139.7 out of 100,000) and cancer (135 out of 100,000), and the likelihood of dying from COVID-19 is 26.49 out of 100,000. (3) The infection fatality rate for Los Angeles—the likelihood of someone dying if they are infected with COVID-19—is only 2.3 percent. (4) The leading cause of death in Los Angeles is heart disease (102.9 out of 100,000), and the likelihood of dying from COVID-19 is 46 out of 100,000. (5) In California, one is 5.27 times more likely to die from heart disease, and 5.1 times more likely to die from cancer than COVID-19. (6) In Los Angeles County, one is 2.23 times more likely to die from heart disease than COVID-19.

[While the Church contends, "The above statistics are readily determinable scientific facts obtainable via reference to government statistics," no source documentation has been provided to the court—or, at least, specific reference to the documents in Exhibits A through H—through which the court could verify the statistics. The County's objection to the court taking judicial notice of these "facts" is well taken. (Plaintiff's Opposition to Defendants' Request for Judicial Notice filed August 28, 2020 4:11-12. ("But [the Church] does not point to any treatises, encyclopedias, or almanacs to support its 'facts.' What does [the Church] cite in support of these supposed scientific facts? *Absolutely nothing."*) In any event, as the court has taken judicial notice of the purported foundational documents, the Church has statistical evidence available to it to support its opposition papers.]

The County's reply RJN of Exhibits A through D is granted as to existence of the documents only and not the truth of the matters contained therein. (Evid. Code 452, subd. (d); see *People v. Franklin* (2016) 63 Cal.4th 261, 280. ["A court may take judicial notice of the [e]xistence of each document in a court file, but can only take judicial notice of the truth of facts asserted in documents such as orders, findings of fact and conclusions of law, and judgments." (Internal quotations omitted.)]) As to Exhibits E and F, the request is granted. (Evid. Code 452, subd. (d).) The Church's objection is sustained in part.

The Church's RJN of Exhibit K is granted. (Evid. Code § 452, subd. (h); *Brown v. Smith* (2018) 24 Cal.App.5th 1135, 1142-1143. See *Moehring v. Thomas* (2005) 126 Cal.App.4th 1515, 1523, fn. 4. *Cf. Behr v. Redmond* (2011) 193 Cal.App.4th 517, 537 fn. 7.) The County's objection is overruled. As to Exhibit L, the request is denied. (See *Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 836.)

The Church's RJN is denied as to the following facts: (1) 94 percent of fatalities relating to COVID-19 involved on average 2.6 other co-morbidities; (2) Because the likelihood of someone dying in California if they are infected with COVID-19 is only 1.8 percent, and 94 percent of COVID-19 related fatalities involve other comorbidities, the infection fatality rate for individuals without other co-morbidities is 0.108 percent; and (3) Because the likelihood of someone dying

in Los Angeles if they are infected with COVID-19 is only 2.3 percent, and 94 percent of COVID-19 related fatalities involve other comorbidities, the infection fatality rate for individuals without other co-morbidities is 0.138 percent.

[Again, while the Church contends "[e]ach of the facts are readily confirmable with reference to the sources described above," the Church does not provide actual citations to assist the court in determining the accuracy of the facts for which judicial notice is requested. As noted earlier, as the court has taken judicial notice of the purported foundational documents, the Church has statistical evidence available to it to support its opposition papers.]

**Evidentiary Objections:**

The County withdrew its evidentiary hearings during oral argument.

Rulings on the Church's evidentiary objections:

Objections 7, 10, 12, 14, 16 and 18 to the Declaration of Jason H. Tokoro are sustained. The remaining objections are overruled.

Objections 1 to the Declaration of Jennifer Mills is sustained. The remaining objections are overruled. (As to the statements of Pastor Mahoney, the court overruled the hearsay objections as the court is not receiving the statements for the truth of the matters asserted therein. Moreover, the statements may be admissible to the extent Pastor Mahoney is authorized to speak for the Church.)

All objections to the Declaration of Dr. Frank Alvarez are overruled.

Objection 2 to the Declaration of Mark Como is sustained. The remaining objections are overruled.

All objections to the Declaration of Muntu Davis, MD, MPH are overruled.

**The County's Proclamation of Local Emergency:**

On March 4, 2020, at a regular meeting of the County's Board of Supervisors (the Board), the Board unanimously ratified "the Proclamation of Local Health Emergency . . . for the Novel Coronavirus in the County . . . ." The Board further declared the proclamation would remain in effect "until its termination is proclaimed by the Board . . . ." The Board also ratified "the Declaration of Local Health Emergency by the County Health Officer made on March 4, 2020, related to the 2019 Novel Coronavirus . . . ." (County RJN, Ex. A at p. 3.)

On July 21, 2020, at a regular meeting of the Board, the Board continued its designation of certain local emergencies. More specifically, the Board unanimously found "[c]onditions of disaster or of extreme peril to the safety of persons or property arose as a result of the

introduction of the novel coronavirus (COVID-19), a novel communicable disease, which was first detected in Wuhan City, Hubei Province, China in December 2019, as proclaimed and ratified by the Board on March 4, 2020." The Board also found an "imminent threat and proximate threat to public health from the introduction of COVID-19 in Los Angeles County, as proclaimed by the Public Health Officer on March 4, 2020 and ratified by the Board on March 4, 2020 . . . ." (County RJN, Ex. B at p. 4.)

**The County's July 18, 2020 Order of the Health Officer:**

The County's July 18, 2020 Order of the health officer (the County Health Order) is 17 pages long, not including various appendices. According to the County Health Order, the County health officer issued the order pursuant to Health and Safety Code sections 101040, 101085 and 120175.

The County Health Order recites its purpose: "to immediately address the serious recent regression of COVID-19 Indicators within the County . . . which show troubling and substantial increases in new daily reported COVID-19 cases, hospitalizations, and the testing positivity rate . . . ." (County Health Order p. 2.) The County Health Order also sets forth its "reasons for the order":

> ". . . evidence of continued community transmission of COVID-19 within the County; continued uncertainty regard the degree of undetected asymptomatic transmission; scientific evidence and best practices regarding the most effective approaches to slow transmission of communicable diseases generally and COVID-19 specifically; evidence that a significant portion of the County population is at risk for serious health complications, including hospitalizations and death from COVID-19, due to age or pre-existing health conditions and further evidence that other County residents, including younger and otherwise healthy people, are also at risk for serious negative health outcomes and for transmitting the virus to others. The Order's intent is to protect the public from the avoidable risk of serious illness and death resulting from the spread of COVID-19." (County Health Order p. 8.)

The County Health Order also explains "community transmission of COVID-19 in Los Angeles County continues to present substantial and significant risk of harm to residents' health." (*Ibid.*) Further, the County Health Order provides,

> "There remains a strong likelihood of a significant and increasing number of cases of community transmission. Making the community transmission problem worse, some individuals who contract the virus causing COVID-19 have no symptoms or

have only mild symptoms, and so are unaware that they carry the virus and are transmitting it to others." (*Ibid.*)[2]

The County Health Order requires "the closure of the following types of higher-risk businesses, recreational sites, commercial properties, and activities, where more frequent and prolonged person-to-person contacts are likely to occur:

    a) Lounges and nightclubs;
    b) Bars, breweries, tasting rooms, craft distilleries, and wineries . . .;
    c) Brewpubs . . .;
    d) Public entertainment venues: movie theaters, live performance theaters, concert venues, theme parks, and festivals;
    e) Family entertainment centers such as bowling alleys, arcades, miniature golf, and batting cages;
    f) All restaurants, but only for indoor, in-person onsite dining until further notice;
    g) Cardrooms . . .;
    h) Indoor and outdoor playgrounds for children, except those located within a school or childcare center;
    i) Indoor portions and exhibits of museums, zoos and aquariums are closed to the public until further notice;
    j) Hot tubs, steam rooms and saunas not located on residential property;
    k) All events and gatherings, unless specifically allowed by this Order."

While group religious worship would fall within the prohibited conduct as an "event and gathering," the County Health Order specifically exempts religious services in Paragraph 15:

"The following activities are permitted under this Order:

"Attending in-person faith-based services, provided that the faith-based service is held outdoors. There is no maximum attendance for faith-based services that are held outdoors, provided that the attendees have enough space to observe strict Social (Physical) Distancing, including a minimum of six feet between attendees from different households, and are wearing cloth face coverings. Faith-based organizations holding in-person outdoor services, must follow the Department of Public Health Places of Worship Protocols, attached to this Order as Appendix F."

---

[2] The County Health Order references the July 13, 2020 order of the State Public Health Officer (the State Health Order). (See Davis Decl., Ex. O.) The State Health Order's explanation of the "current data" concerning COVID-19 is similar to that of the County Health Order. According to the State Health Order, "current data reflect that community spread of infection is of increasing concern across the state." (Davis Decl., Ex. O p. 1.) The State Health Order notes, "The science suggests that for indoor operations the odds of an infected person transmitting the virus are dramatically higher compared to an open-air environment." (Davis Decl., Ex. O p. 2.)

Appendix F, Protocol for Places of Worship, is an eight-page detailed protocol. The protocol permits services "conducted outdoors in compliance with infection control and physical distancing requirements," and virtual services "via live streaming or taping for later broadcast." (Appendix F p. 4.)

Other prohibited "event and gathering" activities specifically exempted from the County Health Order are engaging in activities important to the health and safety of family or household members, obtaining necessary services and supplies (i.e., grocery items), caring for others, vehicle parades, obtaining counseling and outdoor recreation subject to social distancing requirements.

**Procedural Posture:**

As discussed during argument, this matter is not before the court for trial—the action was filed just over 21 days ago. The court is not making a final determination of the merits of the County's Complaint or the constitutional defenses asserted by the Church. Rather, the matter is before the court on a preliminary injunction.

The purpose of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits. (*Brown v. Pacifica Foundation, Inc.* (2019) 34 Cal.App.5th 915, 925.) "The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or . . . should not be restrained from exercising the right claimed by him [or her]." (*Law School Admission Council, Inc. v. State of California* (2014) 222 Cal.App.4th 1265, 1280 [internal quotations and citation omitted].)

**APPLICABLE LEGAL STANDARD**

The standards governing a preliminary injunction are well known. "[A] court will deny a preliminary injunction unless there is a reasonable probability that the plaintiff will be successful on the merits, but the granting of a preliminary injunction does not amount to an adjudication of the merits." (*Beehan v. Lido Isle Community Assn.* (1977) 70 Cal.App.3d 858, 866.) "The function of a preliminary injunction is the preservation of the status quo until a final determination of the merits." (*Ibid.*)

As the parties recognize, "Trial courts traditionally consider and weigh two factors in determining whether to issue a preliminary injunction. They are (1) how likely it is that the moving party will prevail on the merits, and (2) the relative harm the parties will suffer in the interim due to the issuance or nonissuance of the injunction." (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1420.) "[T]he greater the . . . showing on one, the less must be shown on the other to support an injunction." (*Ibid.* [quoting *Butt v. State of California*, (1992) 4 Cal.4th 668, 678].) "The more likely it is that plaintiffs will ultimately prevail, the less severe must be the harm that they allege will occur if the injunction does not

issue." (*Right Site Coalition v. Los Angeles Unified School District* (2008) 160 Cal.App.4th 336, 338-339.) The burden of proof is on the plaintiff as the moving party "to show all elements necessary to support issuance of a preliminary injunction." (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1481.)

Preliminary injunctive relief requires the use of competent evidence to create a sufficient factual showing on the grounds for relief. (*See e.g., Ancora-Citronelle Corp. v. Green* (1974) 41 Cal.App.3d 146, 150.) A plaintiff seeking injunctive relief must also show the absence of adequate damages remedy at law. (Code Civ. Proc. § 526, subd. (a)(4).)

**ANALYSIS**

**The Parties' Positions:**

The County presents its position in a straight-forward fashion: The health officer has the authority to "impose measures to deal with threats to the public health during an emergency" pursuant to various provisions in the Government Code and Health and Safety Code. (*Ex Parte* App. 14:3-4.) The health officer issued the County Health Order. "Compliance with the County Health Order is mandatory." (*Ex Parte* App. 15:10.) The Church has violated the County Health Order, and the County is entitled to injunctive relief to obtain compliance with the County Health Order.

In response, the Church asserts the County Health Order is unenforceable for two reasons: First, the health officer's order is void as a matter of law; the Church argues the Emergency Services Act (ESA), Government Code section 8550 *et seq.* violates separation of powers principles based on the non-delegation doctrine and a legislative veto. Second, the Church contends the County Health Order is an unconstitutional restraint on the guarantee of free exercise found in both the federal and state Constitutions.

**Likelihood of Success on the Merits**

**The Legal Authority for the County Health Order:**

For purposes of the County's request for a preliminary injunction, the court finds it should not reach the issue of the constitutionality of the ESA as requested by the Church. As the authority for the County Health Order can be found outside the ESA, the constitutionality of the ESA need not be considered here. It is a well-established principle that the court should avoid deciding a constitutional question "where other grounds are available and dispositive" of the issue. (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230 [internal quotations omitted].)

The County Health Order specifies the authority upon which it is based—Health and Safety Code sections 101040, 101085 and 120175. While Health and Safety Code section 101040 implicates the ESA—Health and Safety Code section 120175 (Section 120175) does not. The

Church does not address Health and Safety Code section 120175 in its briefing.[3] (See Opposition, Table of Authorities at 1:14-7:21.)

Health and Safety Code section 120175 provides:

> "Each health officer knowing or having reason to believe that any case of the diseases made reportable by regulation of the department, or any other contagious, infectious or communicable disease exists, or has recently existed, within the territory under his or her jurisdiction, shall take measures as may be necessary to prevent the spread of the disease or occurrence of additional cases."

The statute "imposes a mandatory duty on a health officer to take measures to prevent the spread of contagious and communicable diseases . . . ." (*AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 702.) The "health officer must take 'measures as may be necessary,' or 'reasonably necessary,' to achieve the [County's Department of Public Health's] goals and policies, leaving the course of action to the health officer's discretion." (*Ibid.*) The health officer is vested with "discretion to act in a particular manner depending upon the circumstances." (*Ibid.*)

The notion that a municipality's health officer has broad authority is well-established and long-standing. (*Jacobson v. Commonwealth of Massachusetts* (1905) 197 U.S. 11, 25.)[4] "According to settled principles, the police power of a state must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and public safety." (*Ibid.*)

The health officer's authority, however, is not unbridled. Courts have the "duty" to evaluate an exercise of that authority to ensure actions taken have a "real and substantial relationship" to public health and safety. (*Id.* at 31.) The health officer cannot act arbitrarily or oppress. (*Id.* at 38.) In addition, the health officer cannot engage in a "plain, palpable invasion of rights" secured by the Constitution. (*Id.* at 31. See Court of Appeal Order of August 15, 2020 p. 3

---

[3] While during argument the Church asserted Section 120175 was unconstitutional for the same reasons as the ESA, the Church did not raise the claim in advance of the hearing. Thus, the County had no opportunity—other than in its 15 minutes of reply argument—to address the claim. The court finds the constitutionality of Section 120175 is not properly before the court on this motion.

[4] The Church argues *Jacobson v. Commonwealth of Massachusetts, supra*, 197 U.S. at 11 "has no applicability to [the Church's] constitutional rights under the California Constitution." (Opposition 7 n. 4.) The court agrees *Jacobson* alone does not answer the constitutional issues presented here. The United States Supreme Court authority recognizes "a community has a right to protect itself against an epidemic of disease which threatens the safety of its members." (*Jacobson v. Commonwealth of Massachusetts, supra*, 197 U.S. at 27.) Thus, *Jacobson* does inform on the validity of the County Health Order based on the County's police powers.

[community may protect itself "unless its laws are in 'palpable conflict with the Constitution"][quoting *Jacobson v. Commonwealth of Massachusetts*, *supra*, 197 U.S. at 27-31]. See also *Jew Ho v. Williamson* (C.D. Cal. 1900) 103 F. 10. ["But is the regulation in this case a reasonable one? Is it a proper regulation, directed to accomplish the purpose that appears to have been in view? That is a question for this court to determine."])

The court finds the County Health Order has a real and substantial relationship to public health and safety.

Both the County Health Order and the State Health Order speak to the need to take immediate action based on "serious recent regression of COVID-19 Indicators within the County of Los Angeles" as well as the State. (County Health Order p. 2; State Health Order p. 1.) The County Health Order "reimpose[d] certain restrictions that are intended to limit person-to-person contact and slow the current rates of community transmission." (County Health Order p. 9.)

Dr. Davis's declaration establishes his expertise and the justification for the County Health Order. (Davis Decl., ¶¶ 2-6.) The County Health Order is directed at slowing the spread of COVID-19, a communicable disease.[5] (Davis Decl., ¶¶ 7-14. ["The purpose of the orders is to slow the spread of COVID-19 and protect the public health and safety."]) Dr. Davis explains the nature of the virus ("highly contagious") and behaviors "present[ing] an increased risk of community spread" ("large gatherings . . . indoors"). (Davis Decl., ¶¶ 43-44.)

There can be no dispute—based on evidence submitted by the Church—deaths involving COVID-19 exceed 170,000 for the United States as of September 2, 2020. (Church RJN, Ex. K.) On August 11, 2020, COVID-19 related deaths in the United States exceeded 146,000. (Church RJN, Ex. A.) Thus, in the 21 days from August 11 through September 2, 2020, the death rate in the United Stats involving COVID-19 grew by 24,000—more than 1,000 persons a day.

In California—based on evidence submitted by the Church—as of August 11, 2020, the state had 574,411 confirmed cases of COVID-19 resulting in 10,468 deaths. For Los Angeles County—again based on evidence submitted by the Church—on August 24, 2020, the County reported almost 1,200 new cases. In the 7 days prior to August 24, the County was testing an average of 15,674 individuals a day. As of August 24, the daily tests for COVID-19 had a 5.2 percent positivity rate.

Additionally, the experts recognize COVID-19 is transmitted through "respiratory droplets." (Davis Decl., ¶ 48; See also Kaufman Decl., ¶ 12 ["COVID-19's droplet (micro and macro) and surface transmission"]; Delgado Decl., ¶ 19 [discussion of diluting "aerosols containing viral

---

[5] It is the communicable nature of the disease as well as its asymptomatic spread that make COVID-19 fundamentally different than heart disease and cancer. That there is asymptomatic spread does not seem to be disputed. (Delgado Decl., ¶ 32; Kaufman Decl., ¶ 21.) The extent of asymptomatic spread, however, is not yet known. (Delgado Decl., ¶ 32; County Health Order p. 8.)

particles"].) There is an increased risk of transmission of COVID-19 where individuals expel respiratory droplets around others especially where face coverings are not worn and social distancing is not observed. (Davis Decl., ¶ 48.)

The Church's experts, while taking issue with the manner in which Dr. Davis expresses his opinion, acknowledge large gatherings of people have the potential to spread COVID-19. For example, Dr. Davis attests: "Large gatherings of people from different households indoors for long periods of time present an increased risk of community spread (transmission) of COVID-19 during this public health emergency." (Davis Decl., ¶ 44.) The Church's expert, Sean Kaufman, a certified public health professional, properly qualifies Dr. Davis's statement— " . . . the large gathering must including someone who has contracted [COVID-19] and is currently shedding the virus." (Kaufman Decl., ¶ 21.) Dr. Delgado implicitly recognizes the issue of community spread through aerosols containing viral particles in large groups; Dr. Delgado provides extensive discussion about how risk of such transmission can be mitigated with ventilation systems and open doors and windows. (Delgado Decl., ¶¶ 18-21.)

All of this evidence demonstrates the County Health Order and its stated purpose of slowing the spread of COVID-19 has a real and substantial relationship to public health. " '[T]he state's wish to prevent the spread of communicable diseases clearly constitutes a compelling interest.' " (*Brown v. Smith, supra,* 24 Cal.App.5th at 1145 [quoting *Workman v. Mingo County Board of Education* (4th Cir. 2011) 419 Fed. Appx. 348, 353].) The County Health Order bears a rational relationship to that governmental interest in limiting the spread of a communicable disease. In the language of *Jew Ho v. Williamson, supra,* 103 F. 10, 21, the County Health Order is "directed to accomplish the purpose" the government had in view.

In opposition, the Church relies on the medical and scientific opinions from its experts. The court received those expert's opinions into evidence through their declarations.[6]

The declarations, however, do not persuade that the County Health Order is not reasonably related to the stated governmental interest, an interest other courts have found to be compelling. (*Brown v. Smith, supra,* 24 Cal.App.5th at 1145 [quoting *Workman v. Mingo County Board of Education* (4th Cir. 2011) 419 Fed. Appx. 348, 353].) That other experts, if acting as the County's health officer, would have formulated a different plan or even no plan at all, does not establish Dr. Davis's plan to slow the spread of COVID-19 "has no real or substantial relation to" public health and safety. (*Jacobson v. Commonwealth of Massachusetts, supra*, 197 U.S. at 31.) That other experts may disagree with the manner in which Dr. Davis has exercised his discretion through the County Health Order does not establish Dr. Davis's order is arbitrary, capricious, unnecessary or invalid—only that reasonable minds may disagree.

It is not the function of this court "to determine which one of two modes was likely to be the most effective for the protection of the public against disease." (*Jacobson v. Commonwealth of*

---

[6] The County does not concede the expertise of the declarants or the relevance of their testimony.

*Massachusetts, supra*, 197 U.S. at 30.) As noted by Chief Justice Roberts, "The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement." (*South Bay United Pentecostal Church v. Newsom* (2020) 140 S.Ct. 1613 [concurring in denial of application for injunctive relief].) When governmental officials undertake " 'to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad.' " (*Ibid.*)[citation omitted].)[7]

Accordingly, the County has demonstrated a likelihood of success on the merits that the County health officer had the authority to issue the County Health Order, and the County Health Order has a real and substantial relationship to protecting public health. While other experts might approach an obligation to "prevent the spread of disease" differently (Health & Saf. Code § 120175), such differences of professional opinion do not undermine the County's showing of a likelihood of success on this claim. The differing opinions, at this stage of the proceedings, do not establish an abuse of discretion by the County health officer or that the County Health Order is arbitrary.

### Free Exercise: The Federal and State Constitutions

While the County Health Order may have been authorized by law and have a real and substantial relation to public health and safety, it may nonetheless be unenforceable if it violates the state or federal Constitutions. The Church argues the County Health Order does just that, and therefore, the Church cannot legally be enjoined from indoor religious worship. The County contends it has a likelihood of success of prevailing on any constitutional challenge to the County Health Order.

### The Federal Constitution

The First Amendment to the United States Constitution states in part:

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."

As explained by Justice Kennedy, under the free exercise clause,[8]

> "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of

---

[7] The court recognizes (as stressed by the Church during argument) *South Bay United Pentecostal Church v. Newsom, supra,* 140 S.Ct. at 1613 has no precedential value. Nonetheless, given the context and speaker, the court finds the statements persuasive.

[8] The First Amendment is applied to the states through the Fourteenth Amendment of the United States Constitution. (*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah* (1993) 508 U.S. 520, 531.)

burdening a particular religious practice. [Citation.] Neutrality and general applicability are interrelated, and, . . . failure to satisfy one requirement is a likely indication that the other has not been satisfied."

(*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, supra*, 508 U.S. at 531.)

"At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." (*Id.* at 532.) "[I]f the object of the law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." (*Id.* at 533.)

To determine the object of a law, the starting place is the text of it "for the minimum requirement of neutrality is that the law not discriminate on its face." (*Ibid.*) "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." (*Ibid.*)

Here, the text of the County Health Order does not discriminate on its face. It does not specifically target religious practice. That is, the County Health Order limits religious worship only because it applies to all "events and gatherings"—regardless of their purpose—unless such "events and gatherings" are otherwise permitted by the order. Thus, the County Health Order is facially neutral.[9]

In fact, religious services are "specifically allowed" by the order. (County Health Order ¶¶ 7 (k) and 15 (h).) The only reference to religion in the text of the County Health Order is that language specifically permitting "in-person faith-based services, provided that the faith-based service is held outdoors." (County Health Order ¶ 15 (h). See *Catholic Charities of Sacramento, Inc. v. Superior Court* (2004) 32 Cal.4hh 527, 551 [accommodation for religion does not establish lack of facial neutrality].) Accordingly, the court finds the County Health Order is neutral on its face as it does not refer "to a religious practice without a secular meaning discernable from the language or context." (*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, supra*, 508 U.S. at 533.) The County Health Order restricts "all events and gatherings" without regard to their purpose. (County Health Order ¶ 7 (k).)

---

[9] During argument, the Church argued the County Health Order is not facially neutral and that it targets religious worship. The Church suggested it was a target of the order because the County Health Order left open "strip clubs and marijuana dispensaries." As to "strip clubs," it appears to the court they would fall in the category of lounges and nightclubs, bars, or public entertainment venues. (County Health Order ¶ 7.) Those categories of business are all closed under the County Health Order. They also do not appear to be exempted from the order (as are "in-person faith-based services"). As for cannabis sales, the County Health Order is silent. On this record, the court cannot determine whether and to what extent, if at all, cannabis dispensaries can remain open and what restrictions might apply to them.

Additionally, the court finds the County Health Order is of "general applicability." (*Id*. at 542.) "The Free Exercise Clause 'protect[s] religious observers against unequal treatment,' [citation], and inequality results when a legislature decides that the governmental interest it seeks to advance are worthy of being pursued only against conduct with religious motivation." (*Ibid.*)

The County Health Order does not restrict conduct specifically related to religious worship. Instead, it applies generally to all activities where people congregate indoors, often for long periods of time. In fact, in large part, the focus of the County Health Order's restrictions appears to be on indoor activities. These restrictions operate evenly without regard to religion or activities specifically attributable to religious worship. For example, the County Health Order closes lounges, nightclubs, bars, movie theaters, live performance theaters, concert venues, theme parks, indoor dining, museums, zoos, aquariums and festivals. It precludes all events and gatherings, not merely those events or gatherings with religious motivation.

Nothing in evidence suggests the County has enforced its County Health Order in a manner specifically geared toward regulating religious conduct. There is no evidence the County has acted selectively in using its County Health Order to burden religious worship. That is, nothing suggests in practice, the County has targeted religious practices or beliefs with its County Health Order.[10] The burden placed on religious worship (outdoors only, face coverings, social distancing) are, in the language of Justice Kennedy, "incidental effect[s]" of an otherwise neutral law of general applicability.

As Justice Roberts noted when concurring in the denial of an application for injunctive relief concerning the validity of Governor Newsom's executive order,

> "Although California's guidelines place restrictions on places of worship, those restrictions appear consistent with the Free Exercise Clause of the First Amendment. Similar or more severe restrictions apply to comparable secular gatherings, including lectures, concerts, movie showings, spectator sports, and theatrical performances, where large groups of people gather in close proximity for extended periods of time. And the Order exempts or treats more leniently only dissimilar activities, such as operating grocery stores, banks, and laundromats, in which people neither congregate in large groups nor remain in close proximity for extended periods."

---

[10] The Church notes the County made no efforts to enforce the County Health Order during protests and demonstrations following the death of George Floyd. In fact, the Church argues elected officials promoted protest without regard to the County Health Order. To the extent these facts might support a disparate impact claim by the Church, it is not clear in the evidence whether and to what extent, if at all, the County provided permits for the demonstrations and the terms of any such permits or whether such demonstrations arose in a spontaneous fashion. Such facts would inform on the extent to which the County selectively enforces its County Health Order, as suggested by the Church. That such protests occurred outdoors would likely inform on the manner in which the County enforced the order.

(*South Bay United Pentecostal Church v. Newsom, supra,* 140 S.Ct. at 1613 [concurring in denial of application for injunctive relief].)[11]

Accordingly, the court finds the County has established a likelihood of success in defending against a free exercise claim based on the federal Constitution. The County has demonstrated a likelihood of success in demonstrating the County Health Order is neutral on its face and in its application. The County has also shown a likelihood of success that the County Health Order is generally applicable. That is, the County Health Order evenhandedly targets large gatherings of people who remain in close proximity for extended periods of time whether at a movie theater, a sporting event, a concert or an in-person faith-based service.

### The State Constitution

Section 4 of Article One of the California Constitution provides in part:

> "Free exercise and enjoyment of religion without discrimination or preference are guaranteed. This liberty of conscious does not excuse acts that are licentious or inconsistent with the peace or safety of the State . . . ."

The California Supreme Court has not yet been required to "declare the scope and proper interpretation of the California Constitution's free exercise clause." (*Catholic Charities of Sacramento, Inc. v. Superior Court, supra,* 32 Cal.4th at 562.) Thus, the issue is unresolved. The Church would have this court apply strict scrutiny analysis to the County Health Order because it "burdens its religious rights . . . ." (Opposition 7:24-25.) The County argues strict scrutiny review is not required. During argument, at the request of the court, each party addressed the standard of review for free exercise claims under the state Constitution.

To the extent the California Supreme Court would interpret the state Constitution's free exercise clause in a manner consistent with the federal Constitution, the court's discussion above concerning the federal Constitution would be equally applicable here. Therefore, as it did with the federal Constitution, the court would find the County has established a likelihood of success in defending against a free exercise claim based on the state Constitution.

---

[11] During argument, the Church questioned the County Health Order's allowance of retail shopping in large facilities such as Costco. As Justice Roberts recognized, indoor activities related to grocery stores, banks and laundromats are dissimilar to those associated with indoor religious worship. Indoor religious worship here includes seating capacity for 2,800 people within just a few inches of one another. (Delgado Decl., ¶ 20 [and photo of sanctuary in use].) According to the Church's counsel, the services last for approximately one hour. The most similar secular activities to indoor religious worship—attendance at "movie theaters, live performance theaters, [and] concert venues . . ."—are not permitted under the County Health Order. They are also not "specially allowed" by the order to operate. (County Health Order ¶ 7 (d).)

The California Supreme Court, however, could determine otherwise; it could decide strict scrutiny applied to any and all to free exercise claims under the state Constitution. "Under that standard, a law could not be applied in a manner that substantially burdened a religious belief or practice unless the state showed that the law represented the least restrictive means of achieving a compelling interest, or in other words, was narrowly tailored." (*Catholic Charities of Sacramento, Inc. v. Superior Court, supra,* 32 Cal.4th at 562.)

The court finds, however, strict scrutiny is not the proper standard to evaluate the County Health Order in the context of the circumstances here, a public health emergency. First, the language of California's free exercise clause itself speaks of public safety. The state Constitution provides that free exercise "does not excuse acts that are . . . inconsistent with the . . . safety of the State . . . ." Thus, the text of the free exercise clause itself makes allowance for public safety. On the evidence before the court, there can be no question COVID-19 represents a serious threat to public health and safety. Under the express language of the free exercise clause, some limits on free exercise are permissible given these circumstances.

Second, the Supreme Court has already addressed a view—albeit many years ago—that the state's free exercise clause is interpreted in a manner consistent with the way in which the First Amendment to the United States Constitution is interpreted today. That is, while a law may impinge on the free exercise of religion, neutral and generally applicable regulation is permissible under the state Constitution. In 1946, the California Supreme Court held:

> "There can be no question, therefore, that a person is free to hold whatever belief his conscious dictates, but when he translates his belief into action he may be required to conform to reasonable regulations which are applicable to all persons and are designed to accomplish a permissible objective." (*Rescue Army v. Municipal Court of Los Angeles* (1946) 28 Cal.2d 460, 470.)

Accordingly, for purpose of this request for a preliminary injunction, the court finds the free exercise clause of the California Constitution should be interpreted in a manner identical to the First Amendment of the United States Constitution. As the court has already determined the County Health Order does not run afoul of the federal Constitution, it also does not offend the state Constitution.

Based on the foregoing, the court finds the County health officer had the authority to issue his County Health Order. The court also finds the County Health Order does not offend the free exercise clauses of the federal or state Constitutions as it is neutral and generally applicable.

**Balance of Harms**

The second part of the preliminary injunction analysis requires the court to evaluate the harm the plaintiff is likely to sustain if the preliminary injunction is denied compared to the harm the defendant is likely to suffer if the injunction is issued. (*IT Corp. v. County of Imperial* (1983) 35

Cal.3d 63, 69-70.) The focus is on the harms suffered on a temporary basis while the order is in place—before the matter is tried.

The court must "examine the relative actual harms to the parties." (*Id.* at 72.)

> "[A]n injunction should issue only if - after consideration of both (1) the degree of certainty of the outcome on the merits, and (2) the consequences to each of the parties of granting or denying interim relief - the trial court concludes that an injunction is proper. At this stage of the analysis, no hard and fast rule dictates which consideration must be accorded greater weight by the trial court. For example, if it appears fairly clear that the plaintiff will prevail on the merits, a trial court might legitimately decide that an injunction should issue even though the plaintiff is unable to prevail in a balancing of the probable harms. On the other hand, the harm which the defendant might suffer if an injunction were issued may so outweigh that which the plaintiff might suffer in the absence of an injunction that the injunction should be denied even though the plaintiff appears likely to prevail on the merits." (*Id.* at 72-73.)

The Court of Appeal balanced the harms between the parties when it granted the stay on the TRO as follows:

> "At this stage, the 'relative interim harm to the parties' also favors issuance of a stay. Consistent with the presumption of constitutionality that attaches to public laws, the status quo is that the County is empowered to enforce the 'indoor religious services' provision of its Health Order. Were we to issue a stay of the trial court's order denying the County its power to enforce the provision, the Church would be denied the right to conduct its services *indoors*, but would be able to conduct them *outdoors*. Were we to not issue a stay of the trial court's order, the County would be barred from enforcing that provision and the Church would be able to conduct its services *indoors*, even though indoor church services have been a 'source of outbreak' of COVID-19 due to the heightened risk of transmission when people are 'in close proximity to one another for extended periods of time' and they are 'singing, shouting and chanting,' risks that 'physical distanc[ing] and wearing a mask' do not eliminate.' As between the harm that flows from heightened risk of transmitting COVID-19 (namely, 'serious illness and death') and the harm that flows from having to conduct religious services outdoors instead of indoors, the balance at this early stage favors issuance of a stay."

The Church addresses the balance of harms in its papers only in terms of nuisance. Before argument, the court asked each party to make additional factual arguments related to the balance of harms. The court has considered those arguments in its analysis here.

If the injunction does not issue, the County contends its citizens are at substantial risk of infection from community spread of COVID-19. The evidence from all the experts supports the

notion of community spread; dispute exists, however, as to the extent of risk from it. The County persuasively argues congregants of the Church are not isolated amongst themselves but circulate within the County outside of their times together in religious worship. All citizens of the community therefore—even those who do not worship at the Church—would be at risk of infection through community spread. The County also argues the possibility of "overwhelming the healthcare system at a time of increasing rates of infection" presents a public health risk. (*Ex Parte* App. 21:7-8.)

The County also relies on the undisputed statistics to support its claim of harm. No matter how statisticians might spin the numbers, on their most basic level, the facts are indisputable and easy to understand. As of September 2, 2020, this communicable disease spread by aerosol droplets has caused the death of more than 170,000 people in the United States in a matter of months.

If the injunction issues, the Church argues its congregants will be irreparably harmed. That harm stems from the inability to worship in its sanctuary, "a moral and religious obligation." (MacArthur Decl., ¶ 23.) The "Church's sanctuary itself is a spiritual refuge for [the Church's] congregants." (*Id*. at ¶ 22.) The Church's congregants will suffer emotional harm from the restriction on their indoor worship.

While the court is mindful that there is no substitute for indoor worship in the "spiritual refuge" of a sanctuary, the court cannot ignore the County Health Order does not dictate a ban on worship. Instead, it provides any worship must take place other than indoors. The County Health Order allows worship to occur outdoors, virtually through the internet and in any manner that is not indoors with a large gathering of people. This feature of the County Health Order mitigates—but certainly does not eliminate—the harm that will be suffered by the Church's congregants through restricting their indoor worship.

Like the Court of Appeal when considering the stay, the court finds the balance of harms tips in favor of the County. The potential consequences of community spread of COVID-19 and concomitant risk of death to members of the community—associated and unassociated with the Church—outweighs the harm that flows from the restriction on indoor worship caused by the County Health Order.

**CONCLUSION**

Based on the foregoing, the court finds the County has demonstrated a likelihood of success on the merits of its claims. The court also finds the balance of harms tips in its favor. Accordingly, the County's request for a preliminary injunction is granted. No bond is required.

**IT IS SO ORDERED.**

September 10, 2020

_____
Hon. Mitchell L. Beckloff, Superior Court Judge

# Exhibit C

SUPREME COURT
FILED

SEP 9 2020

Jorge Navarrete Clerk

_____
Deputy

S264063

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

IMMANUEL SCHOOLS et al., Petitioners,

v.

GAVIN NEWSOM, as Governor, etc., Respondent;

SANDRA SHEWRY, as Director of Department of Public Health, etc., Real Party in Interest.

The request for judicial notice is granted.
The petition for immediate stay and peremptory writ of mandate in the first instance is denied.

CANTIL-SAKAUYE
*Chief Justice*

# Appellate Courts Case Information

## Supreme Court

Change court ⌄

*Court data last updated: 09/10/2020 12:45 PM*

## Disposition

**ORANGE COUNTY BOARD OF EDUCATION v. NEWSOM (SHEWRY)**
**Division SF**
**Case Number S264065**

Only the following dispositions are displayed below: Orders Denying Petitions, Orders Granting Rehearing and Opinions. Go to the Docket Entries screen for information regarding orders granting review.

**Case Citation:**
**none**

| Date | Description |
|------|-------------|
| 09/09/2020 | Mandate/Prohibition petition denied |

**Click here** to request automatic e-mail notifications about this case.

Careers | Contact Us | Accessibility | Public Access to Records | Terms of Use |      © 2020 Judicial Council of California
Privacy