Charles S. LiMandri, SBN 110841
Paul M. Jonna, SBN 265389
Jeffrey M. Trissell, SBN 292480
LIMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938
cslimandri@limandri.com
pjonna@limandri.com
jtrissell@limandri.com

Thomas Brejcha, *pro hac vice*\*
Peter Breen, *pro hac vice*\*
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
tbrejcha@thomasmoresociety.org
pbreen@thomasmorsociety.org
\*Application forthcoming

Attorneys for Plaintiffs

Harmeet K. Dhillon (SBN: 207873)
Mark P. Meuser (SBN: 231335)
Gregory R. Michael (SBN: 306814)
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
harmeet@dhillonlaw.com
mmeuser@dhillonlaw.com
gmichael@dhillonlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTH BAY UNITED PENTECOSTAL CHURCH, a California nonprofit corporation, and BISHOP ARTHUR HODGES III, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, in his official capacity as the Governor of California, *et al.*,<br><br>Defendants. | Case No.: 3:20-cv-865-BAS<br><br>**Notice of Supplemental Authority in Support of South Bay Pentecostal Church's Renewed Motion for a Temporary Restraining Order / Preliminary Injunction**<br><br>Judge: Cynthia Bashant<br>Dept: Courtroom: 4B<br>Date: TBD<br>Time: No Oral Argument Unless Requested by the Court |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE of the following supplemental authorities, which were issued after briefing was complete regarding Plaintiffs South Bay United Pentecostal Church and Bishop Arthur Hodges III's Renewed Motion for Temporary Restraining Order / Preliminary Injunction:

1. On September 10, 2020, the Wisconsin Supreme Court issued an order accepting review of three separate writ petitions and staying enforcement of the government's onerous COVID-19 restrictions. A copy of that order is attached hereto as Exhibit A. Relevant portions of that order are highlighted.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: September 11, 2020   By: *[signature]*
Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Attorneys for Plaintiffs

**EXHIBIT A**



OFFICE OF THE CLERK

# Supreme Court of Wisconsin

**110 EAST MAIN STREET, SUITE 215**
**P.O. BOX 1688**
**MADISON, WI 53701-1688**

TELEPHONE (608) 266-1880
FACSIMILE (608) 267-0640
Web Site: www.wicourts.gov

September 10, 2020

**To:**

| | |
|---|---|
| Remzy D. Bitar | Marcia A. MacKenzie |
| Sadie Ramona Zurfluh | Dane County Corporation Counsel |
| Municipal Law & Litigation Group, S.C. | Room 419 |
| 730 N. Grand Ave. | 210 Martin Luther King, Jr. Blvd. |
| Waukesha, WI 53186 | Madison, WI 53703-3345 |
| | |
| Bernardo Cueto | Joseph W. Voiland |
| WISLawyer LLC | Veterans Liberty Law |
| P.O. Box 68 | 519 Green Bay Road |
| Onalaska, WI 54650-0068 | Cedarburg, WI 53012 |
| | |
| Brent Eisberner | Colin Hector |
| Levine Eisberner, LLC | Colin Thomas Roth |
| 14 W. Mifflin St., Ste. 206 | Assistant Attorney General |
| Madison, WI 53703-2568 | P.O. Box 7857 |
| | Madison, WI 53707-7857 |

*Address list continued on page 10.

You are hereby notified that the Court has entered the following order:

Nos. 2020AP1419-OA   James v. Heinrich
     2020AP1420-OA   Wis. Council of Religious and Indep. Schools, et al. v. Heinrich, et al.
     2020AP1446-OA   St. Ambrose Academy, Inc., et al. v. Parisi, et al.

Pending before this court are three separate petitions for leave to commence an original action relating to Dane County Emergency Order #9: (1) James v. Heinrich, Case No. 2020AP1419; (2) Wis. Council of Religious and Indep. Schools, et al. v. Heinrich, et al., Case No. 2020AP1420; and (3) St. Ambrose Academy, Inc. v. Parisi, et al., Case No. 2020AP1446.

Page 2
September 10, 2020
Nos. 2020AP1419-OA    James v. Heinrich
     2020AP1420-OA    Wis. Council of Religious and Indep. Schools, et al. v. Heinrich, et al.
     2020AP1446-OA    St. Ambrose Academy, Inc., et al. v. Parisi, et al.


Responses to each of the petitions and non-party briefs, amicus curiae, have also been filed. The petitioners in two of these matters have requested emergency temporary injunctive relief.[1]

IT IS ORDERED that the petitions for leave to commence an original action are granted and this court assumes jurisdiction over these actions. These three matters shall be consolidated for purposes of briefing and oral argument in this court;

IT IS FURTHER ORDERED that within 30 days after the date of this order the Petitioners shall file a single, combined brief in this court that shall not exceed 75-pages (16,500 words); that within 20 days of filing of the petitioners' brief, the Respondents shall file a single, combined responsive brief that shall not exceed 75-pages (16,500 words); and within 10 days of filing of the Respondents' brief, the Petitioners may each file a reply brief that shall not exceed 13 pages (3,000 words) or a statement that no reply brief will be filed; and

IT IS FURTHER ORDERED that the appendix to the Petitioners' brief shall contain a stipulation from all parties on the facts that are undisputed and those that may be in dispute; as part of the stipulation process the parties shall endeavor in good faith to identify those facts that are strictly relevant to the legal issues in the case, and endeavor to reach agreement on them; this court may, in its discretion, upon prior notice to the parties, direct the matter to a circuit court or referee for resolution of relevant facts that remain in dispute, Wis. Stat. § 751.09;

IT IS FURTHER ORDERED that pending this court's consideration of the merits of these matters, those provisions of Emergency Order #9 issued by Public Health Madison & Dane County on August 21, 2020, as amended September 1, 2020, which purport to prohibit schools throughout Dane County from providing in-person instruction to students, are temporarily enjoined, effective the date of this order.

Petitioners request temporary injunctive relief. To obtain temporary injunctive relief a movant must show (1) a reasonable probability of success on the merits; (2) lack of an adequate remedy at law; (3) the movant will suffer irreparable harm in the absence of an injunction; and (4) that a balancing of the equities favors issuing the injunction. See, e.g., Pure Milk Products Coop. v. National Farmers Org., 90 Wis. 2d 781, 800, 280 N.W.2d 691 (1979); Werner v. A.L. Grootemaat & Sons, Inc., 80 Wis. 2d 513, 520, 259 N.W.2d 310 (1977)). At times, this court has also noted that "[t]emporary injunctions are to be issued only when necessary to preserve the status quo." Werner, 80 Wis. 2d at 520. We conclude temporary injunctive relief is warranted.

---

[1] The Department of Health Services (DHS) is not a party to this lawsuit. Therefore, notwithstanding Justice Dallet's dissent, this order expresses no opinion about the scope or limits of DHS's power or authority.

Page 3
September 10, 2020
Nos. 2020AP1419-OA    James v. Heinrich
      2020AP1420-OA    Wis. Council of Religious and Indep. Schools, et al. v. Heinrich, et al.
      2020AP1446-OA    St. Ambrose Academy, Inc., et al. v. Parisi, et al.

      First, based upon the briefing submitted at this stage, Petitioners are likely to succeed on the merits of their claim. Petitioners assert that provisions of Section 4(d) of Public Health Madison & Dane County Emergency Order #9, which limit in-person student instruction for all schools in Dane County based on certain criteria, exceed Respondents' authority. Multiple arguments—constitutional, statutory, and administrative—are lodged against the Order. While reserving the remaining claims for later disposition, we conclude that local health officers do not appear to have statutory authority to do what the Order commands.

      The stated legal basis for the Order rests in the statutory grant of duties and certain powers to local health officers in Chapter 252, which contains the legislature's grant of authority to the executive branch over communicable diseases. Wisconsin Stat. § 252.02 (2017–18)[2] prescribes certain duties and grants specific powers to the Department of Health Services (DHS). Of particular note, subsection (3) grants DHS power to "close schools and forbid public gatherings in schools, churches, and other places to control outbreaks and epidemics." The powers and duties entrusted to local health officers, however, are different. In the very next section, Wis. Stat. § 252.03, the legislature conspicuously omits the power to "close schools" in its grant of authority to local health officers. Local health officers may similarly "forbid public gatherings when deemed necessary to control outbreaks or epidemics" and are given authority to "inspect schools . . . to determine whether the buildings are kept in a sanitary condition." § 252.03(1)–(2). But the explicit power to "close schools" is statutorily absent.

      This differential grant of power must be given full meaning and effect. See State v. Dorsey, 2018 WI 10, ¶29, 379 Wis. 2d 386, 906 N.W.2d 158 (holding that the provision of a specific statutory exception "implies that no other exceptions are intended") (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107–11 (2012) ("The expression of one thing implies the exclusion of others (expressio unius est exclusio alterius).")). Both Wis. Stat. § 252.02 and Wis. Stat. § 252.03 were drafted at the same time and by the same legislature, so no historical quirk or later amendment, at least that has been revealed at this stage of the proceedings, would suggest anything other than the legislature granted DHS and local health officers different powers.

      Heinrich responds that she is not closing schools, just preventing in-person instruction. But this statute was drafted in 1923, so the most reasonable reading of what it means to "close schools" would seem to be to preventing in-person instruction, not just preventing learning generally. Indeed, Secretary Palm's order that we addressed last term in Wis. Legislature v. Palm, 2020 WI 42, 391 Wis. 2d 497, 942 N.W.2d 900, contained a section closing schools to in-person

---

[2] All subsequent references to the Wisconsin Statutes are to the 2017–18 version unless otherwise indicated.

Page 4
September 10, 2020
Nos. 2020AP1419-OA    James v. Heinrich
    2020AP1420-OA    Wis. Council of Religious and Indep. Schools, et al. v. Heinrich, et al.
    2020AP1446-OA    St. Ambrose Academy, Inc., et al. v. Parisi, et al.

learning,[3] a provision defended by Secretary Palm in part on the grounds that Wis. Stat. § 252.02(3) grants her power to "close schools."

Heinrich also argues that the Order is authorized because Wis. Stat. § 252.03(2) states that she "may do what is reasonable and necessary for the prevention and suppression of disease," and that this Order constitutes a permissible restriction on "public gatherings." However, what is reasonable and necessary cannot be read to encompass anything and everything. Such a reading would render every other grant of power in the statute mere surplusage. And a reading that gives carte blanche authority to a local health officer to issue any dictate she wants, without limit, would call into question its compatibility with our constitutional structure. See State ex rel. Adams v. Burdge, 95 Wis. 390, 399-400, 70 N.W. 347 (1897). Similarly, the statutory power to forbid public gatherings is given to both DHS and local health officers. But only DHS is given the power to "close schools." Therefore, whatever the permissible applications of the statutory power to forbid public gatherings may be, the text suggests it does not and cannot extend to the broader power of DHS to close schools in the fashion accomplished in the Order.

In short, Petitioners are likely to succeed on the merits of their argument that the Order's broad closure of schools in this case is not within the statutory grant of power to local health officers in Wis. Stat. § 252.03.

Beyond likelihood of success, Petitioners also have shown no legal remedy is available and that failure to grant an injunction would cause irreparable harm. Unquestionably, denying students in-person education has the potential to harm the educational institution-Petitioners, as well as the parent-Petitioners and their children. As Petitioners assert, many parents irreparably lose the full benefits of the communal education they chose for their children, including in-person instruction, relationships with teachers and other students, and religious and spiritual formation. And while technology may mitigate some ill-effects for some students, Petitioners maintain that distance and technology-based learning is less than ideal, if not harmful, for many students. Absent an injunction, Petitioners will not have a second opportunity to provide in-person instruction for classes currently underway. Tellingly, neither Respondents' brief nor the Attorney General's amicus brief disputes Petitioners' claims of irreparable harm or lack of a legal remedy.

We recognize competing considerations and policy choices underlying the Order, but we conclude that on balance the equities favor issuance of a temporary injunction. See Pure Milk Products Co-op, 90 Wis. 2d at 800. Respondents certainly have a substantial interest in protecting the health and safety of Dane County residents. Petitioners also have substantial interests in

---

[3] Secretary Palm ordered "that all public and private K-12 schools 'shall remain closed' for the remainder of the year." Wis. Legislature v. Palm, 2020 WI 42, ¶7, 391 Wis. 2d 497, 942 N.W.2d 900.

Page 5
September 10, 2020
Nos. 2020AP1419-OA     James v. Heinrich
      2020AP1420-OA     Wis. Council of Religious and Indep. Schools, et al. v. Heinrich, et al.
      2020AP1446-OA     St. Ambrose Academy, Inc., et al. v. Parisi, et al.

advancing childhood education and providing students a stable and effective learning environment. It is noteworthy that Petitioners went to great lengths—and expended non-negligible sums—to provide students, teachers, and staff the ability to resume in-person instruction with safety precautions in place. In addition, Petitioner educational institutions and parents voluntarily seek in-person instruction, understanding the health risks associated with doing so. The Order itself is both broad and without apparent precedent. Overriding the choices of parents and schools, who also undoubtedly care about the health and safety of their teachers and families, intrudes upon the freedoms ordinarily retained by the people under our constitutional design. Since it appears the Order does not rest on a sound legal basis, a consideration of the equities leads us to conclude a temporary injunction is appropriate.[4]

Petitioners having satisfied the requisite standards, we temporarily enjoin those provisions of Section 4(d) of Emergency Order #9 which purport to prohibit schools throughout Dane County from providing in-person instruction to students and enjoin enforcement thereof.

IT IS FURTHER ORDERED that the parties will be notified in due course of the scheduling of oral argument.

REBECCA GRASSL BRADLEY, J. *(concurring).* Justice Dallet decries the court's "interfere[nce] with a local health officer's ability to make difficult, health-based decisions pursuant to her statutory authority." Local health officers have no statutory authority to impose the order Dane County's health officer made. In this case, Dane County's local health officer invoked a statute according her certain powers as a basis for entering an order the legislature (and, more importantly, the people of Dane County) never authorized her to make. Justice Dallet goes on to lament the court "not even allow[ing] a local circuit court judge to resolve a local dispute." Of course, unlike the court's earlier decision to preclude every circuit court judge in the state from conducting any jury trials until the court allowed jury trials to proceed, this court's decision to take original jurisdiction in this matter did not interfere with any pending circuit court proceeding. No action challenging the local health officer's order was filed in any circuit court in Dane County.

---

[4]This court has at times also noted that "[t]emporary injunctions are to be issued only when necessary to preserve the status quo." Werner, 80 Wis. 2d at 520. A temporary injunction should "neither give . . . new rights nor alter[ ] the positions of the parties." Shearer v. Congdon, 25 Wis. 2d 663, 668, 131 N.W.2d 377 (1964). This temporary injunction preserves the status quo. When Respondents issued Emergency Order #9 on Friday, August 21, 2020, Petitioners had either already begun school or had conducted months-long preparations to begin school in the days following—with several set to begin the school year on Monday, August 24. That status quo will be preserved only by issuing a temporary injunction. See Shearer, 25 Wis. 2d at 667–68 (upholding a temporary injunction enjoining ongoing blockage of a road over which plaintiffs sought a prescriptive easement).

Page 6
September 10, 2020
Nos. 2020AP1419-OA    James v. Heinrich
    2020AP1420-OA    Wis. Council of Religious and Indep. Schools, et al. v. Heinrich, et al.
    2020AP1446-OA    St. Ambrose Academy, Inc., et al. v. Parisi, et al.

This court removed nothing from any circuit court but instead exercises its constitutional authority to decide a case presenting significant issues of statewide importance.[5] The court acts well within its constitutional authority, and rightly so.[6] This is exactly the type of case the people of Wisconsin elected us to decide. Declining to hear the case would amount to an abdication of the court's institutional responsibilities constitutionally conferred on the state's highest court.[7]

REBECCA FRANK DALLET, J. *(dissenting).* Throughout the COVID-19 pandemic, certain members of this court have repeated the mantra of local control: that we should take care not to "usurp" local officials' ability to control the spread of COVID-19 due to the virus's unique impact on each locality. See, e.g., In Re the Matter of the Extension of Orders and Interim Rule Concerning Continuation of Jury Trials, Suspension of Statutory Deadlines for Non-Criminal Jury Trials, and Remote Hearings During the Covid-19 Pandemic (S. Ct. Order issued May 22, 2020) (Ziegler and Hagedorn, JJ., concurring) ("This order moves us in the direction of returning to local

---

[5] See Petition of Heil, 230 Wis. 428, 284 N.W. 42, 50 (1938) (concluding this court has exclusive jurisdiction when "the questions presented are of such importance as under the circumstances to call for [a] speedy and authoritative determination by this court in the first instance").

[6] See State ex rel. Ozanne v. Fitzgerald, 2011 WI 43, ¶98, 334 Wis. 2d 70, 798 N.W.2d 436, (Abrahamson, C.J., dissenting) ("The concept of original jurisdiction allows cases involving matters of great public importance to be commenced in the supreme court in the first instance." (quoted sources omitted)).

[7] See Wis. Const. art. VII, § 3(2) (conferring jurisdiction on the supreme court to hear "original actions and proceedings"); Wis. S. Ct. IOP III (Sept. 13, 2019) ("principal criterion" for review is "whether the matter . . . trigger[s] the institutional responsibilities of the Supreme Court"); Wisconsin Small Businesses United, Inc. v. Brennan, 2020 WI 69, ¶¶43-45, 69, 393 Wis. 2d 308, 335, 946 N.W.2d 101 (Rebecca Grassl Bradley, J., dissenting) (recognizing the supreme court's institutional responsibility to decide "a significant issue of statewide importance"); SXR Zignego v. Wis. Elec. Comm'n, 2020AP123-W (S. Ct. Order issued June 1, 2020 (Rebecca Grassl Bradley, J., dissenting)) ("It is the duty of Wisconsin's highest court to decide cases presenting novel issues of statewide significance."; recognizing this court's failure to do so is an abdication of its responsibility); Ozanne, 334 Wis. 2d 70, ¶20 (Prosser, J., concurring) ("Delaying the inevitable [by waiting for traditional review by a lower court] would be an abdication of judicial responsibility; it would not advance the public interest.").

Page 7
September 10, 2020
Nos. 2020AP1419-OA James v. Heinrich
     2020AP1420-OA Wis. Council of Religious and Indep. Schools, et al. v. Heinrich, et al.
     2020AP1446-OA St. Ambrose Academy, Inc., et al. v. Parisi, et al.

control. . . . We would prefer the order provide even more flexibility to determine the safety procedures that are best in those counties.").[8]

But today, those same justices interfere with a local health officer's ability to make difficult, health-based decisions pursuant to her statutory authority. In fact, by assuming original jurisdiction over this action, the majority, contrary to prior exhortations, will not even allow a local circuit court judge to resolve a local dispute over the validity of a local public health ordinance. Id. (Rebecca Grassl Bradley, J., dissenting) ("I would . . . leave the manner of conducting circuit court proceedings to the circuit court judges, who at this point have had two months to evaluate when and how they may safely conduct jury trials and other proceedings, in consultation with leaders and stakeholders in their respective counties.").

The majority achieves its abrupt about-face by contorting our longstanding original-action and injunctive-relief jurisprudence. But worse than flouting the wisdom of that precedent, the majority's impulsive exercise of both our original jurisdiction and equitable authority promotes a type of forum shopping that undermines our legitimacy as a neutral, apolitical arbiter and signals to lower courts that this court does not trust their ability to fairly apply the law. I must dissent from this misguided exercise of our authority.

The Wisconsin Constitution broadly confers on the state's circuit courts "original jurisdiction in all matters civil and criminal within this state"; it also grants this court the power to "hear original actions and proceedings." Wis. Const. art. VII, §§ 3(2), 8. But this court's grant is finite. Two principles guide us on when to constitutionally commandeer circuit courts' original jurisdiction——and more importantly, when not to do so.

First, this court has continually recognized that the "true spirit and order of the constitutional grant of jurisdiction" demands that municipal undertakings ordinarily be left to the circuit court——even those presenting "questions publici juris." Attorney General v. City of Eau Claire, 37 Wis. 400, 445-46 (1875). This court thus "limits its exercise of original jurisdiction to exceptional cases in which a judgment by the court significantly affects the community at large." State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, ¶38 n.15, 363 Wis. 2d 1, 866 N.W.2d 165 (quoting Wis. Prof'l Police Ass'n, Inc. v. Lightbourn, 2001 WI 59, ¶4, 243 Wis. 2d 512, 627 N.W.2d 807).

Second, this court should not take original jurisdiction over actions presenting questions of disputed fact for which the circuit court is better equipped to resolve. See In re Exercise of Original

---

[8] See also Oral Argument at 1:01:52-1:02:20, Wisconsin Legislature v. Palm, 2020 WI 42, 391 Wis. 2d 497, 942 N.W.2d 900 (No. 2020AP765-OA), https://wiseye.org/2020/05/05/wisconsin-supreme-court-oral-argument-wisconsin-legislature-v-andrea-palm/.

Page 8
September 10, 2020
Nos. 2020AP1419-OA    James v. Heinrich
    2020AP1420-OA    Wis. Council of Religious and Indep. Schools, et al. v. Heinrich, et al.
    2020AP1446-OA    St. Ambrose Academy, Inc., et al. v. Parisi, et al.


Jurisdiction of Supreme Court, 201 Wis. 123, 128, 229 N.W. 643 (1930) ("This court will, with the greatest reluctance, grant leave for the exercise of its original jurisdiction . . . , especially where questions of fact are involved." (emphasis added)).  Together, these two principles instruct us to reserve our original jurisdiction for rare cases that involve purely legal questions of statewide concern that, because of some exigency, cannot satisfactorily proceed through the traditional legal process.  The petitions before us do not fit that rubric.

   The three petitions level several fact-intensive challenges against a local public-health officer's order designed to slow the spread of a novel and highly communicable virus.  In order to impart statewide import to their claims, Petitioners characterize Emergency Order #9 as having "closed" schools, in violation of a local health officer's statutory authority.  Yet Petitioners acknowledge two things that undercut their characterization.  First, they recognize that Emergency Order #9 is an outlier in the state, affecting only Dane County.  Second, they concede that schools are open for many purposes, including in-person instruction for students in kindergarten through the second grade, one-on-one special education services, food distribution, unregulated youth programs, licensed-exempt public school programs, low-risk sports, and religious services and practice.

   Ultimately, Petitioners (and several amici) dispute what measures are "reasonable and necessary" pursuant to Wis. Stat. § 252.03(2) to prevent the spread of COVID-19 throughout Dane County, and whether these measures are narrowly tailored in light of Petitioners' allegation that Emergency Order #9 infringes on their constitutional rights to freely exercise their religion and to control their children's "upbringing and education."  Resolution of these claims turns on facts that are not only adamantly disputed, but unique to Dane County, such as infection rates, community-spread levels, and the County's specific efforts to contain COVID-19.  The plethora of unresolved factual questions, all of which are integral to resolving these claims, is aptly illustrated by Petitioners' and amici's multi-volume appendices detailing Petitioner Schools' plans for opening, the communications schools sent to parents, the Petitioner Parents' belief that in-person secular instruction is fundamental to their religious exercise, and various scientific studies.  This court is not a fact-finding court.  "The circuit court is much better equipped" than this court to develop and resolve these factual questions.  See In re Exercise of Original Jurisdiction, 201 Wis. at 128.

   Given the numerous, unresolved factual questions and the purely local nature of this dispute, I conclude that Petitioners' challenges squarely belong in a circuit court, before the local judges elected by the citizens of that locality.  The majority's decision to the contrary ignores our precedent, promotes forum shopping, and sends a message that this court believes that local judges cannot properly interpret or apply the law.

   The majority similarly casts aside decades of precedent that imposes important limitations on a court's issuance of injunctive relief.  See Werner v. A. L. Grootemaat & Sons, Inc., 80 Wis. 2d 513, 520, 259 N.W.2d 310 (1977) ("[I]njunctions, whether temporary or permanent, are not to be issued lightly."); see also Fromm & Sichel, Inc. v. Ray's Brookfield, Inc., 33 Wis. 2d 98,

Case 3:20-cv-00865-BAS-AHG   Document 63   Filed 09/11/20   PageID.5350   Page 12 of 15

Page 9
September 10, 2020
Nos. 2020AP1419-OA   James v. Heinrich
    2020AP1420-OA   Wis. Council of Religious and Indep. Schools, et al. v. Heinrich, et al.
    2020AP1446-OA   St. Ambrose Academy, Inc., et al. v. Parisi, et al.

103, 146 N.W.2d 447 (1966); Bartell Broads., Inc. v. Milwaukee Broad. Co., 13 Wis. 2d 165, 171, 108 N.W.2d 129 (1961). Petitioners' burden on a motion for an injunction is to prove four elements: (1) a reasonable probability of success on the merits; (2) a lack of an adequate remedy at law; (3) that they will suffer irreparable harm without an injunction; and (4) that a balancing of the equities favors issuing the injunction. See, e.g., Pure Milk Products Coop. v. Nat'l Farmers Org., 90 Wis. 2d 781, 800, 280 N.W.2d 691 (1979); Werner, 80 Wis. 2d at 520. Petitioners here fail to meet their burden.

At this stage, Petitioners have not shown a reasonable probability of success on the merits. Petitioners claim that a local health officer has no authority pursuant to Wis. Stat. § 252.03(2) to "close schools" because that power belongs exclusively to state officials under § 252.02(3). As discussed above, schools, as institutions, are not "closed"; Emergency Order #9 prohibits only in-person instruction for certain students. And, despite the textual differences between §§ 252.02(3) and 252.03(2), it is reasonable to read the latter as granting a local health officer the authority to prevent in-person instruction under her power to "do what is reasonable and necessary for the prevention and suppression of disease" and to "forbid public gatherings when deemed necessary to control outbreaks or epidemics." In light of these competing statutory interpretations, Petitioners' claims are, at best, "unsettled," making an injunction inappropriate. See Akin v. Kewaskum Cmty. Sch. Joint Sch. Dist., 64 Wis. 2d 154, 159-60, 218 N.W.2d 494 (1974).[9]

Petitioners likewise fail to demonstrate that they have a reasonable probability of success on their constitutional claims. Emergency Order #9 does not favor secular activities over religious ones. Indeed, it does the opposite: it specifically exempts religious exercise from its restrictions on in-person gatherings. As for parents' rights to direct the education of their children, no Wisconsin court has ever recognized the right to in-person instruction in all circumstances. See id. (noting that an injunction should not issue when the right in question is not "established"). All of Petitioners' claims turn on factual questions about whether Emergency Order #9 is necessary, reasonable, and tailored to combat the ongoing COVID-19 pandemic. Those questions require further factual development in the circuit court before the success of Petitioners' claims may be determined with any reasonable degree of accuracy.

---

[9] As the majority's analysis asserts, if local health officers lack the power to "close" schools, that is because there is another entity with the authority to close them: DHS. The majority correctly points out that DHS has the explicit statutory authority to close schools under Wis. Stat. § 252.02(3). According to this court's reasoning in Palm, 391 Wis. 2d 497, DHS has the authority to issue a local order to close schools to control the spread of COVID-19. Id., ¶4 (explaining that DHS is not "without any power to act in the face of this pandemic"); id., ¶¶3 n.6, 58 n.21 (noting that the majority opinion "does not apply" to DHS's order to close schools); see also id., ¶229 (Hagedorn, J., dissenting) (noting that, per the Palm majority's reasoning, DHS could "act locally without going through the rulemaking process").

Page 10
September 10, 2020
Nos. 2020AP1419-OA  James v. Heinrich
    2020AP1420-OA  Wis. Council of Religious and Indep. Schools, et al. v. Heinrich, et al.
    2020AP1446-OA  St. Ambrose Academy, Inc., et al. v. Parisi, et al.

But even setting aside the perceived merits, Petitioners fail to provide any evidence that irreparable harm is caused to children or parents by incrementally transitioning third through twelfth graders to in-person instruction as the number of infections in the community reaches a safe threshold. The majority claims that Petitioners have shown such harm while, in the same breath, noting that Petitioners have claimed only that remote instruction is "less than ideal." Everything about the pandemic is less than ideal but inconvenience does not rise to the level of an irreparable harm that this court must remedy.

On the other hand, granting an injunction may cause irreparable harm in the form of risk of severe illness and death. Students gathered together may spread COVID-19 to school staff, each other, and other community members with whom they have contact. The majority asserts that Petitioners undertake that risk "voluntarily . . . , understanding the health risks associated with doing so." Petitioners, and the majority, fail to understand that we are all in this together; voluntarily sending children to school may put others in the community at risk involuntarily. See Bostco LLC v. Milwaukee Metro. Sewage Dist., 2013 WI 78, ¶253, 250 Wis. 2d 554, 835 N.W.2d 160 (Abrahamson, J., dissenting) (if granting an injunction harms an "important public interest," then there is a "compelling" reason to deny it) (quoting City of Harrisonville v. W.S. Dickey Clay Mfg. Co., 289 U.S. 334, 338 (1933)). That risk tips the balancing of the equities sharply away from Petitioners.

For the foregoing reasons, I respectfully dissent.

I am authorized to state that Justices ANN WALSH BRADLEY and JILL J. KAROFSKY join this dissent.

                                                                Sheila T. Reiff
                                                                Clerk of Supreme Court

Address list continued:

Richard M. Esenberg                          Ryan J. Owens
Anthony LoCoco                               Political Science Professor
Elisabeth H. Sobic                           University of Wisconsin-Madison
Lucas Thomas Vebber                          214 North Hall,
Wisconsin Institute for Law & Liberty        1050 Bascom Mall
330 East Kilbourn Avenue, Suite 725          Madison, WI 53706
Milwaukee, WI 53202-3141

Page 11
September 10, 2020
Nos. 2020AP1419-OA    James v. Heinrich
      2020AP1420-OA    Wis. Council of Religious and Indep. Schools, et al. v. Heinrich, et al.
      2020AP1446-OA    St. Ambrose Academy, Inc., et al. v. Parisi, et al.


Daniel R. Suhr
Liberty Justice Center
Suite 1500
190 LaSalle St.
Chicago, IL 60603

Kevin M. LeRoy
Misha Tseytlin
Troutman Pepper Hamilton Sanders LLP
227 W. Monroe St.
Chicago, IL 60606

Erick G. Kaardal
Mohrman, Kaardal & Erickson, P.A.
150 Fifth Street S., Suite 3100
Minneapolis, MN 55402

Andrew M. Bath
Thomas More Society
309 W. Washington Street, Ste. 1250
Chicago, IL 60601

# CERTIFICATE OF SERVICE

*South Bay United Pentecostal Church, et al. v. Gavin Newsom, et al.*
USDC, Southern District Case No.: 3:20-cv-00865-BAS-AHG

I hereby certify that I electronically filed the following document with the Clerk of the Court by using the CM/ECF system:

- **Notice of Supplemental Authority in Support of South Bay Pentecostal Church's Renewed Motion for a Temporary Restraining Order / Preliminary Injunction.**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

[X]   BY ELECTRONIC TRANSMISSION: I electronically filed the above document(s) with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send notification of this filing to the person(s).

[ ]   BY MAIL: By placing a copy of the same in the United States Mail, postage prepaid, and sent to their last known address(es).

[X]   BY ELECTRONIC MAIL: I served a true copy, electronically on designated recipients via electronic transmission of said documents.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

Executed on September 11, 2020, at Rancho Santa Fe, California.

_____
Kathy Denworth