FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 2 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: SOUTH BAY UNITED PENTECOSTAL CHURCH; BISHOP ARTHUR HODGES III, <br><br> ———————————————— <br><br> SOUTH BAY UNITED PENTECOSTAL CHURCH, a California nonprofit corporation; BISHOP ARTHUR HODGES III, an individual, <br><br>         Petitioners, <br><br>  v. <br><br> UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO, <br><br>         Respondent, <br><br> GAVIN NEWSOM, in his official capacity as the Governor of California; MATT RODRIGUEZ, in his official capacity as the Acting Attorney General of California; TOMAS ARAGON, in his official capacity as California Public Health Officer; WILMA J. WOOTEN, in her official capacity as Public Health Officer, County of San Diego; HELEN ROBBINS-MEYER, in her official capacity as Director of Emergency Services; WILLIAM D. GORE, in his official capacity as Sheriff of the County of San Diego, | No. 21-70769 <br><br> D.C. No. 3:20-cv-00865-BAS-AHG Southern District of California, San Diego <br><br> ORDER |

<div style="border: 1px solid;">Real Parties in Interest.</div>

Before: WARDLAW and CLIFTON, Circuit Judges, and HILLMAN,[*] District Judge.

On March 30, 2021, South Bay United Pentecostal Church and Bishop Arthur Hodges III (collectively, "South Bay") filed an Urgent Petition for Writ of Mandamus under Circuit Rule 27-3(b) (ECF No. 1). That same day, we ordered an answer from the State of California (the "State") (ECF No. 2). For the following reasons, we deny the petition without prejudice.

On February 5, 2021, the Supreme Court issued *South Bay United Pentecostal Church, et al. v. Newsom, et al.*, 141 S. Ct. 716 (2021) ("*South Bay II*"). The Court enjoined the State of California from "enforcing the Blueprint's [for a Safer Economy] Tier 1 prohibition on indoor worship services" against South Bay. *Id.* at 716. The Court denied South Bay's request for injunctive relief "with respect to the percentage capacity limitations,"[1] and specifically stated that the State was "not enjoined from imposing a 25% capacity limitation on indoor worship services in Tier 1." *Id.* at 716. The Court further explained that its "order

---

[*] The Honorable Timothy Hillman, United States District Judge for the District of Massachusetts, sitting by designation.

[1] South Bay's emergency application in the Supreme Court had also requested that the percentage capacity limitations across all tiers of the Blueprint be enjoined. The Supreme Court declined to do so. *See South Bay II*, 141 S. Ct. at 716.

2

is without prejudice to the *applicants* presenting new evidence to the District Court that the State is not applying the percentage capacity limitations . . . in a generally applicable manner."[2] *Id.* (emphasis added). In other words, the Court invited South Bay to present further evidence to the district court that the State's 25% and 50% capacity restrictions on indoor worship services are underinclusive because the same restrictions do not apply to secular activities that pose similar dangers of spreading COVID-19, and thus violate the Free Exercise Clause.

The following day, February 6, the State revised the Blueprint to allow indoor worship at 25% capacity in Tier 1 and removed the numerical caps in Tiers 2 and 3 (the latter of which we had previously ordered). The State retained the 25% capacity limit in Tier 2 and the 50% capacity limit in Tiers 3 and 4. The State also loosened its ban on singing and chanting during worship services by permitting performers (but not congregants in the audience) to engage in singing, chanting, and similar vocalizations, subject to face-coverings, enhanced distancing, and other precautions.[3]

Although it has long been known that Easter Sunday would be on April 4,

---

[2] South Bay's urgent petition concedes that the Court's reference to "percentage capacity limitations" is to Tiers 2 through 4, as Tier 1 prohibited indoor worship entirely and imposed no capacity limitation.

[3] Heeding concerns expressed by members of the *South Bay II* Court, the State also clarified that performers in the entertainment industry are prohibited from singing before a live audience.

2021, with Palm Sunday falling on the prior Sunday, March 28, South Bay waited until March 11, more than a month after the State's February 6 implementation of the revised restrictions, to move for a temporary restraining order ("TRO") on an emergency basis in the district court.  It sought an injunction against enforcement of the 25% capacity restriction before Holy Week commenced on March 28.[4]  South Bay submitted no new evidence with its motion.[5]  In accordance with South Bay's request, the district court set the TRO hearing for March 24, before Palm Sunday.  But South Bay requested an extension of time for the briefing and hearing schedule so that it could file a reply.  To accommodate this request, the district court reset the hearing date for March 29.

At the TRO hearing, the district court determined that an evidentiary hearing was necessary before it could properly grant injunctive relief.  The new evidence presented by both sides joined at least two questions: (1) Whether due to occupancy loads, notwithstanding the lower percentage caps for worship services as compared to certain secular activities, houses of worship were in actuality

---

[4] Although it is clear that South Bay seeks to enjoin Tier 2's 25% capacity limitation, it is unclear precisely what relief South Bay seeks.  In its petition, South Bay suggests that it should be treated both like nonessential retail (subject to a 50% capacity limitation in Tier 2) and like a grocery store (subject to no capacity restrictions in Tiers 2–4 but required to follow other stringent social distancing requirements).

[5] In response to the State's expert declaration addressing occupancy rates and how they affect percentage of capacity limitations, South Bay submitted new declarations of its own for the first time on reply.

treated more favorably than those activities; and (2) whether the State took occupancy loads into consideration when determining the least restrictive means or whether this argument is a post hoc rationalization. The district court noted the understandable frustration of some members of the Court with the lack of a meaningful record, *see, e.g.*, *South Bay* II, 141 S. Ct. at 717 (Barrett, J., concurring), so it determined that it could not grant immediate injunctive relief without holding an evidentiary hearing. After initially scheduling the hearing for April 7, the court pushed it back to accommodate South Bay's discovery requests. South Bay then filed this urgent petition with our court, contending that the district court erred by denying the TRO pending an evidentiary hearing.

"Mandamus 'is a drastic and extraordinary remedy reserved for really extraordinary causes.'" *In re Bundy*, 840 F.3d 1034, 1040 (9th Cir. 2016) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted)). "[O]nly exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion, will justify the invocation of" the remedy. *Cheney*, 542 U.S. at 380. Because "the writ is one of 'the most potent weapons in the judicial arsenal,'" *Bundy*, 840 F.3d at 1040 (quoting *Cheney*, 542 U.S. at 380), we consider five factors to determine whether relief is appropriate:

> (1) whether the petitioner has other adequate means, such as direct appeal, to attain the relief he or she desires; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of

> law; (4) whether the district court's order makes an "oft-repeated error," or "manifests a persistent disregard of the federal rules"; and (5) whether the district court's order raises new an important problems, or legal issues first impression.

*In re Van Dusen*, 654 F.3d 838, 841 (9th Cir. 2011) (citing *Bauman v. United States Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 1977)). "[T]he absence of factor three—clear error as a matter of law—will always defeat a petition for mandamus." *Bundy*, 840 F.3d at 1941 (quoting *In re United States*, 791 F.3d 945, 955 (9th Cir. 2015)).

We cannot conclude that the district court committed clear error as a matter of law. The Supreme Court permitted South Bay to present new evidence to show that the percentage capacity limitations are not generally applicable, but South Bay failed to do so until it filed its TRO reply papers. At the hearing, the district court considered both parties' submitted declarations addressing the application of the percentage caps. The State contended that the percentage caps are applied in a way that favors places of worship. South Bay, on the other hand, averred that the State's arguments constituted an impermissible post hoc rationalization. Both parties represented that additional evidence is forthcoming. The district court was unable to make findings on an adequate record and thus exercised its discretion to continue the hearing to develop the record for meaningful review. This was not an abuse of discretion, notwithstanding the unfortunate timing.

Accordingly, we DENY without prejudice South Bay's petition for this

6

extraordinary relief.

**IT IS SO ORDERED.**